IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOAN PETTIGREW, )
)
        Plaintiff, )
)
   vs. ) Civil Action No. 2:14-42
)
CAROLYN COLVIN, Acting Commissioner )
of Social Security, )
)
        Defendant. )
)

AMBROSE, Senior District Judge

# OPINION
### and
# ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 8 and 12). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 9 and 13). Plaintiff also has filed a Reply Brief. (Docket No. 14). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion (Docket No. 12) is denied in part and Plaintiff's Motion (Docket No. 8) is granted to the extent that the case is remanded to the Commissioner for further proceedings consistent with the Opinion that follows.

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). Plaintiff applied for DIB on or about February 14, 2011. (R. 154-58, 176). In her application, she alleged that he had been disabled since

August 1, 2007 due to bursitis and anxiety. Id. She later amended her alleged onset of disability date to August 1, 2008. (R. 223).[1] Administrative Law Judge ("ALJ") John Kooser held a hearing on September 4, 2012, at which Plaintiff was represented by counsel. (R. 34-78). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 70-77). In a decision dated October 26, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 10-23). The Appeals Council denied Plaintiff's request for review. (R. 1-6). Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 8 and 12). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is

---

[1] Plaintiff also filed an application for supplemental security income (SSI), but that application was denied on March 11, 2011, because she had too much income to be eligible for SSI. (R. 92-101).

overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by

3

medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.      WHETHER THE ALJ IMPROPERLY EVALUATED PLAINTIFF'S CREDIBILITY**

Plaintiff argues that the ALJ improperly evaluated her credibility when he concluded that her conservative course of medical treatment was inconsistent with disabling impairments. Pl.'s Br. [ECF No. 9] at 19; Pl.'s Reply Br. [ECF No. 14] at 5-6. After careful consideration, I agree.

It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determination is entitled to great deference. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

As the ALJ stated, he must follow a two-step process when assessing pain: first, he must determine whether there is a medical impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms; and, second, he must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms to determine the extent to which they limit the plaintiff's functioning. (R.15). Pain alone, however, does not establish a disability. 20 C.F.R. § 404.1529(a). Allegations of pain must be consistent with objective medical evidence and the ALJ

must explain the reasons for rejecting non-medical testimony. <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 121 (3d Cir. 2000).

In determining the limits on a claimant's capacity for work, the ALJ will consider the entire case record, including evidence from the treating, examining, and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities, descriptions of pain, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 404.1529(c); S.S.R. 96-7p. The ALJ also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. § 404.1529(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible. <u>See Burns v. Barnhart</u>, 312 F.3d 113, 129–30 (3d Cir. 2002).

Here, the ALJ concluded, <u>inter alia</u>, that:

> The course of medical treatment and the use of medication in this case are not consistent with disabling impairments. The claimant has received very limited and conservative treatment that has allowed her to remain fairly active as reflected in her numerous activities of daily living. The claimant has not undergone surgery. Moreover, the claimant has not used alternative treatment modality, such as referral to a pain [*sic*]. Furthermore, the claimant does not receive formal mental health treatment from a psychiatrist or psychologist. Therefore, I find that the course of medical treatment in this case diminishes the claimant's credibility with respect to the degree of [her] pain and other subjective complaints.

(R. 18-19). Plaintiff contends that the ALJ erred in concluding she lacked credibility due to "limited and conservative treatment" because, in so finding, he failed to address her inability to afford such treatment due to lack of medical insurance. Pl.'s Br. [ECF No. 9] at 19; Pl.'s Reply Br. [ECF No. 14] at 5-6.

It is well-established that an "ALJ may rely on lack of treatment, or the conservative nature of treatment, to make an adverse credibility finding, but only if the ALJ acknowledges and

5

considers possible explanations for the course of treatment." Wilson v. Colvin, No. 3:13-cv-02401-GBC, 2014 WL 4105288, at * 11 (M.D. Pa. Aug. 19, 2014). As set forth in Social Security Ruling 96-7p, "[t]he adjudicator must not draw any inferences about an individual's symptoms and their functional effect from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7p, 1996 WL 374186, at **7-8. Possible explanations that may provide insight into an individual's credibility include the inability to afford treatment and/or lack of access to free or low-cost medical services. Id. Courts routinely have remanded cases in which the ALJ's credibility analysis fails to address evidence that a claimant declined or failed to pursue more aggressive treatment due to lack of medical insurance. See, e.g., Wilson, 2014 WL 4105288, at 11-12; Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 470 (3d Cir. 2007); Sincavage v. Barnhart, 171 F. App'x 924, 927 (3d Cir. 2006); Henderson v. Astrue, 887 F. Supp. 2d 617, 638-39 (W.D. Pa. 2012); Plank v. Colvin, Civ. No. 12-4144, 2013 WL 6388486, at *8 (E.D. Pa. 2013).

In this case, Plaintiff testified that, due to her lack of health insurance, she could not afford the hip surgery that her surgeon, Dr. Tonnies, recommended. (R. 45-46). She also testified that she could not afford to get certain pain prescriptions filled or to take advantage of other treatment for her hip pain such as physical therapy. (R. 45-46, 53). The treatment records from Plaintiff's longtime treating physician, Dr. Dougherty, contain numerous notations that she could not afford the recommended hip surgery without medical insurance. (R. 237-38, 241, 282, 286); see also R. 232-35 (records from surgeon David Tonnies, M.D., discussing hip surgery as an option). Early in his Step 4 analysis, the ALJ even acknowledges Plaintiff's testimony that she had been unable to undergo surgery because she did not have insurance. (R. 15). The ALJ,

6

however, never states whether he credited that testimony and, as set forth above, clearly cites lack of surgery and otherwise conservative treatment as a reason to discredit the claimed intensity, persistence, and limiting effects of her hip pain. (R. 18-19). Because the ALJ failed to consider Plaintiff's explanation for her failure to pursue additional treatment options such as surgery, his rejection of Plaintiff's credibility on the ground of her conservative treatment course cannot stand. See Wilson, 2014 WL 4105288, at *11; S.S.R. 96-7p. Upon remand, the ALJ must reassess Plaintiff's credibility in accordance with S.S.R. 96-7p.[2]

C. **WHETHER THE ALJ FAILED TO GIVE APPROPRIATE WEIGHT TO THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIAN AND THE AGENCY'S EXAMINING PSYCHOLOGIST**

Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions of her treating physician, M.C. Dougherty, M.D., and the Agency's own examining consultative psychologist, Daniel Materna, Psy. D. Plaintiff contends that the underlying medical records support these opinions and that, under applicable regulations, the ALJ should have given them greater weight. I address Plaintiff's argument first with respect to her physical limitations and, second, with respect to her mental limitations.

### 1. Physical Limitations

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the

---

[2] On remand, the ALJ is not required to credit Plaintiff's testimony and, if supported by specific, legitimate reasons, he may still be able to conclude that Plaintiff's "conservative" treatment undermines her credibility or that other grounds such as Plaintiff's activities of daily living even absent surgery are inconsistent with disabling pain. Because the ALJ did not discuss Plaintiff's insurance issues in his credibility analysis, however, I am unable to determine whether he considered her lack of insurance or merely ignored it. As such, I cannot conclude at this juncture that Plaintiff's conservative treatment provides substantial evidence supporting the ALJ's credibility determination. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000).

7

medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009).

Here, the record evidence shows that Plaintiff saw her primary care physician, Dr. Dougherty, regularly between February 2008 and the date of the hearing in 2012 for her mental and physical complaints, including her left hip bursitis. (R. 236-61, 282-87). On February 18, 2011, Dr. Dougherty completed a Physical Residual Functional Capacity Report in which she opined that Plaintiff's hip pain was severe enough to "constantly" interfere with the attention and

8

concentration required to perform simple work-related tasks. (R. 275-78). The Report stated that Plaintiff could sit for two hours and stand or walk for less than one hour in an eight-hour work day; that Plaintiff could never lift, carry, bend, squat, crawl, climb, or reach above shoulder level; and that Plaintiff would need to take unscheduled breaks during the work day. Id.

The ALJ acknowledged that Dr. Dougherty was "a treating source with insight into the claimant's condition." (R. 19). Nevertheless, he gave her restrictive February 18, 2011 opinion little weight because he found that it was not supported by her own treatment of Plaintiff or Plaintiff's treatment history. Id. As examples, the ALJ cited several of Dr. Dougherty's treatment notes stating that Plaintiff was doing "overall ok" as well as an August 2012 note indicating that Plaintiff was exercising and walking. Id. (citing Exs. 2F, 8F, 9F). The ALJ also concluded that Dr. Dougherty's opinion was inconsistent with Plaintiff's numerous activities of daily living. Id. (citing Ex. 5E). Ordinarily, the ALJ would be entitled to afford less than great weight to a treating physician's opinion for these reasons if supported by record evidence. In this case, however, the ALJ's analysis of Dr. Dougherty's records is colored by his opinion that those records reflect a course of conservative treatment inconsistent with disabling pain. (R. 16-17). As set forth above, the ALJ erred in failing to discuss the effect of Plaintiff's inability to afford medical insurance on her course of treatment. Because Plaintiff's health insurance argument relates directly to her hip pain treatment, the ALJ must re-evaluate Dr. Dougherty's opinions on remand and explain what, if any, impact her lack of health insurance has on his conclusions.

**2. Mental Limitations**

The ALJ rejected Plaintiff's claim of disabling anxiety on the grounds that her medical history concerning her mental impairments showed that Plaintiff was "generally ok" with limited treatment. (R. 17-19). Although Dr. Dougherty filled out an Anxiety Residual Function Capacity Report in February 2011, opining that Plaintiff had moderate restriction of activities of

9

daily living; marked difficulties in maintaining social functioning; extreme deficiencies of concentration; and continual episodes of decompensation, the ALJ gave that opinion little weight because it was not supported by the evidence and not consistent with the record as a whole. (R. 19). With respect to social functioning, the ALJ noted that Plaintiff did speaking engagements for AA, which was inconsistent with marked restrictions. He also cited her report that she has no problems getting along with others as well as her numerous activities of daily living. Id. The ALJ further explained that Dr. Dougherty's opinion was inconsistent with her treatment records which reflected that she was "generally ok" with conservative treatment and that Plaintiff had never received formal mental health treatment from a psychiatrist or psychologist. (R. 17-19).

The ALJ also acknowledged that Daniel Materna, Psy. D. completed a consultative examination of Plaintiff on May 10, 2011. (R. 18, citing Ex. 5F). Dr. Materna completed a medical source statement after the examination opining that Plaintiff had slight restriction in understanding, remembering and carrying out short, simple instructions and making judgments on simple work-related decisions; moderate restriction in interacting appropriately with the public, supervisors, and co-workers and responding appropriately to changes in a routine work setting; and marked restriction in understanding, remembering and carrying out detailed instructions and responding to work pressures in a usual work setting. (R. 20, citing Ex. 5F). The ALJ found that Dr. Materna's opinions generally were consistent with a finding of not disabled and that the finding of marked restrictions was not supported by the medical record. Id. In rejecting the marked restrictions, the ALJ again cited to Dr. Dougherty's treatment notes and Plaintiff's activities of daily living and conservative treatment history. Id. The ALJ gave significant weight to the opinion of non-examining state agency psychologist, Dr. Brace, who completed a mental residual functional capacity assessment and psychiatric review technique of Plaintiff on

May 17, 2011, and opined that Plaintiff was not significantly limited to only moderately limited in all work-related mental activities. (R. 20, citing Ex. 1A).

I disagree with Plaintiff that the ALJ's detailed analysis of her mental impairments and supporting evidence is inconsistent with applicable social security regulations and precedent. Plaintiff further contends, however, that the ALJ's assessment of Plaintiff's mental abilities suffers the same flaw as his analysis of her hip pain because he does not discuss the impact of her lack of health insurance on her conservative treatment course and failure to seek further psychiatric treatment. Pl.'s Br. [ECF No. 9] at 19. Based on the record evidence, this argument is less persuasive in the context of Plaintiff's anxiety than her hip pain. Although Dr. Dougherty's treatment notes contain numerous notations that Plaintiff could not afford hip surgery without insurance, the records never mention lack of insurance as a reason preventing additional mental health treatment. See Exs. 2F, 8F, 9F. Likewise, when asked at the hearing whether she ever had discussed seeing a mental health professional with Dr. Dougherty, Plaintiff did not mention insurance, responding only that "she couldn't remember if we ever discussed that." (R. 55). Nevertheless, on remand, I instruct the ALJ to revisit this issue and explain in his findings what effect, if any, Plaintiff's lack of insurance has on his analysis of Plaintiff's mental impairments. In addition, if the ALJ's findings regarding Plaintiff's bursitis change as a result of the insurance issue, the ALJ must re-assess whether Plaintiff's physical and mental impairments, in combination, create disabling limitations.

### D. **WHETHER THE ALJ'S MENTAL RFC FINDING WAS SUFFICIENTLY SPECIFIC TO COMPLY WITH AGENCY POLICY AND LEGAL PRECEDENT**

Plaintiff argues that the ALJ's mental RFC finding was not sufficiently specific to comply with Agency policy or Third Circuit precedent, and that it failed to address all of Plaintiff's mental limitations of record. Pl.'s Br. [ECF No. 9] at 21-25. In particular, she contends that the ALJ

11

did not adequately account for Plaintiff's moderate limitations of concentration, persistence, and pace in his RFC finding. I disagree.

In evaluating Plaintiff's mental impairments, including depression, anxiety, panic attacks with agoraphobia, obsessive compulsive disorder, and alcohol dependence, the ALJ found, <u>inter alia</u>, that Plaintiff had moderate limitations with regard to concentration, persistence, and pace. (R. 13-14). The ALJ's RFC finding incorporated numerous limitations related to Plaintiff's mental impairments, including a limitation to jobs involving no more than simple, routine, repetitive tasks that would be performed in a low-stress work environment, which the ALJ defined as one involving no high volume productivity requirements, very infrequent unexpected changes, a stable and predictable work atmosphere, and no complex decision making. (R. 15). The ALJ further limited Plaintiff to jobs involving no more than occasional interaction with the public, co-workers, or supervisors. <u>Id</u>.

Plaintiff does not challenge the ALJ's characterization of her limitations in the areas of concentration, persistence, and pace as moderate. She argues, however, that the RFC finding does not adequately reflect moderate deficiencies in these areas. In particular, Plaintiff cites <u>Ramirez v. Barnhart</u>, 372 F.3d 546 (3d Cir. 2004) for the proposition that a limitation to simple, routine tasks does not adequately account for a claimant's moderate deficiencies in pace. Pl.'s Br. [ECF No. 9] at 24-25. Plaintiff's reliance on <u>Ramirez</u> is misplaced.

In <u>Ramirez</u>, the Court of Appeals for the Third Circuit found that the ALJ's hypothetical limiting the plaintiff to simple, one- to two-step tasks did not sufficiently take into account the fact that the plaintiff "often" suffered from deficiencies in concentration, persistence, or pace. 372 F.3d at 554. Numerous courts within this Circuit, however, have distinguished <u>Ramirez</u>, holding that a limitation to simple, routine tasks sufficiently addresses "moderate" deficiencies in concentration, persistence, and pace. <u>See, e.g.</u>, <u>McDonald v. Astrue</u>, 293 F. App'x 941, 946-48

(3d Cir. 2008) (distinguishing Ramirez and finding that a hypothetical limiting a claimant to "simple, routine tasks" was sufficient to account for "moderate" deficiencies in concentration, persistence, and pace); Menkes v. Astrue, 262 F. App'x 410, 412-13 (3d Cir. 2008) (hypothetical limiting claimant to simple, routine tasks adequately reflected moderate limitations in concentration, persistence, and pace); Padilla v. Astrue, Civ. A. No. 10-cv-4968, 2011 WL 6303248, at *10 (D.N.J. Dec. 15, 2011) (citing cases); Watson v. Colvin, No. 12-552, 2013 WL 5295708, at *5 (W.D. Pa. Sept. 18, 2013); Polardino v. Colvin, No. 12-806, 2013 WL 4498981, at *3 (W.D. Pa. Aug. 19, 2013) ("The Third Circuit Court of Appeals has determined that a limitation to simple, routine tasks sufficiently accounts for a claimant's moderate limitations in concentration, persistence, and pace."); Haines v. Astrue, Civ. Action no. 11-309, 2012 WL 1069987, at *1 n.1 (W.D. Pa. Mar. 29, 2012).

Plaintiff's concern that a limitation to routine tasks does not take into account her moderate deficiencies in pace is further unfounded because the ALJ in this case did not merely limit Plaintiff to simple, routine tasks. Rather, his RFC finding restricted Plaintiff to jobs involving no more than simple, routine, repetitive tasks that would be performed in a low-stress work environment, which he defined as one involving no high volume productivity requirements, very infrequent unexpected changes, a stable and predictable work atmosphere, and no complex decision making. (R. 15). These additional limitations go beyond simple, routine tasks and more than adequately address Plaintiff's moderate pace deficiencies. See, e.g., Haines, 2012 WL 1069987, at *1 n.1.

Because the ALJ properly accounted for Plaintiff's pace limitations supported by the record in formulating her RFC, substantial evidence supports this portion of the RFC finding, and remand on this point is unwarranted.

### III. CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial evidence because, in discussing his RFC and credibility findings, the ALJ failed to address Plaintiff's testimony and other record evidence regarding her lack of medical insurance as an explanation for her failure to pursue more aggressive medical treatment, especially with regard to her hip bursitis. The case therefore is remanded for further consideration in light of this Opinion. For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied to that same extent. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOAN PETTIGREW,

    Plaintiff,

vs.

CAROLYN COLVIN, Acting Commissioner of Social Security,

    Defendant.

Civil Action No. 2:14-42

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 24th day of September, 2014, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 8) is GRANTED in part, and the matter is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED in part and DENIED in part as set forth in the Opinion attached hereto.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge